Good morning, Your Honors. Vicente Montoya for the record. Your Honor, the petitioners assert that they have established a well-founded fear of persecution based on past persecution and fear of future persecution. The basis for past persecution includes membership of a family. This is a unique situation in that there are two separate decisions that have been rendered. In a previous decision, the former wife and mother of the petitioners was granted asylum with her two daughters by an immigration court. The petitioners before the court were severed from that case because of the divorce that took place. Did the children make the elections? No, Your Honor. Who did? The election was made by the court when the mother indicated that she wished to adjust her status. The son, who was 18 at the time that the marriage was entered into, did not qualify for an adjustment of status. So, therefore, he had to be severed from the case because he could not qualify for that particular relief. That relief was not pursued. There was a change of venue to San Francisco. That relief was not pursued because there was a divorce of that U.S. citizen husband and there were allegations of interest by that U.S. citizen in the daughters. For that reason, the petitioner — excuse me. Wait a minute. Let's back off here and tell me the statutory process or the administrative rule that applies to the severance and the election as to how the children will be treated in further proceedings. Well, Your Honor, in that particular case, all of the parties were before Judge Weiss. That would include the mother, the father, and the three children. And at the time that they went before the court, the mother had divorced the father and married a U.S. citizen. And she petitioned to be severed because she was going to apply for adjustment of status. She qualified because she had a legal entry. The judge made a decision to sever the cases and continue with the case of the son and the father because the son, because he was over the age of 18, did not qualify for adjustment of status. Well, the BIA opinion reads differently. Counsel for the respondents made it clear, one, that although the lead respondent's ex-wife would provide testimony to support his asylum application, the lead respondent's asylum application was separate from his ex-wife's. This is supposedly what the lawyer said. And, two, that their son would go forward on the lead respondent's asylum application as a derivative applicant. So this seems to me, according to the BIA, to have been a representation by the parties to counsel. Your Honor, if you look at the actual transcript of what took place in the hearing with the immigration judge, it is not that situation. Transcript at 11 and 12? Your Honor, let me see. At the individual hearing, yes, on May 20, 1997, at page 97. That was their first appearance before the court. At page 97, lines 1 through 13, the lead respondent had now divorced and married the U.S. citizen, and the judge granted the motion for a change of venue and to sever the files. Well, you're still not addressing precisely what I read. I'm reading the BIA saying that the attorney said that their son would go forward on the lead resident's application as a derivative applicant, citing the transcript at pages 11 and 12. I'm reading from the BIA. Did you read this? Yes, I read the BIA's decision, Your Honor, and that's a misstatement of what actually took place in the hearing on May 20, 1997. On May 20, 1997, the respondents, all the family appeared before the immigration judge. And at that time, on page 97, the mother indicated that she had divorced the father, had married a U.S. citizen, and would proceed with an adjustment of status. And the judge granted a severance of the case based on that. And the judge had the decision for the son to move forward with the father. By what authority? Does he have a statutory right to do that as a judge? Yes, she had a right to sever the case. But what's the administrative rule that says the judge can sever a minor out from the case and send it with father as opposed to mother, whether the child cares or not? Well, Your Honor, the issue is that the mother was no longer pursuing, no longer intended to pursue an application for asylum. I'm not worried about mother's status. But if mother got to be a citizen and she had a dependent child, wouldn't the child become a citizen ultimately? Only if the child were petitioned as a permanent resident. If you move back about three inches, you're booming. Stay there a minute. Only if the child was actually petitioned as a permanent resident. There's no automatic grant of a U.S. citizenship. No, but that's not what I'm saying. Well, you're saying that she was petitioning, and then the court severed out the child. No, Your Honor, that's not what I'm saying. I am saying that she was going to be petitioned by her U.S. citizen husband to become a permanent resident. She and her two children. Her son did not qualify to be petitioned by that U.S. citizen because the marriage that was entered into was entered into after he was 18. There is statutory authority that prohibits a step-parent from applying for a child when the marriage was entered into after the child is 18. Doesn't the petition date relate back to her original application? Which petition, Your Honor? Where she sought citizenship or protection of the United States. Your Honor, it was her U.S. citizen husband that was going to petition for the mother and for the children. Is any of this spelled out in statute at all? Yes, Your Honor, and I specifically attached a copy of the instructions for the I-130 and also the statute I referred to it, which indicates that a son who is over the age of 18 when the marriage is entered into cannot be petitioned by the step-parent. Well, you know, I'm very confused by your presentation and probably by the record. On page 40 of your brief, you say the son was never withdrawn from the mother's 96 asylum claim. The son was allowed to withdraw his own 97 application. What does that mean? The son was allowed to withdraw. What had happened as a result of this family situation, the mother had intended to go forward with the adjustment of status. And at the time when her case was, there was a change of venue to San Francisco and she was going to pursue this, she had already indicated that she was divorced from the U.S. citizen to the court and that she was not going to apply for adjustment of status. And at that time, she was supposed to have withdrawn her application for asylum. She never withdrew her application for asylum. The son was allowed to withdraw his own application. What does that mean? What's the implication of that? In 1997, they appeared before the first immigration judge, Judge Weiss, where there was a severance of the case. Even though the son was under the age of 21 and did not need a separate application. He had one. A separate application was filed for him. The judge thereafter severed the case and the son's case rode with the father's file because at that time no benefit could be derived from the mother's file. Yes. The benefit from the mother was the adjustment of status. So wasn't it perfectly appropriate then to attach the son to the father if no benefit could be obtained from the mother's file? Absolutely. His own was unnecessary. There was nothing he could get from the mother's. So in his interest, they attached him to the father. That is correct. And as it developed, the reason that the mother had initially severed, had one of the cases severed was for the adjustment of status. That never took place. She then proceeded with her separate application for asylum. What are you asking us to do? Are you asking us to reattach the son to the mother? To send it back somehow to get the benefit out of the asylum that was granted to the mother? Is that what this is all about? Your Honor, the argument that is being made is that based on the asylum grant of the mother, that that is part of a family and that people in a similarly situated situation should receive similar benefits. I understand that. The BIA seemed to think there was an election made, that the son decided to go with the father. Too bad. You're asking us to undo that, to send it back to see if somehow you can reattach the son to the mother. Is that what's happening? And then I figure you will conclude from that that he will automatically get it because the mother got it. Your Honor. What are you asking us to do? And how? Your Honor, had he been under 21 when his mother was grasping him. What are you asking us to do and how do we get there? Your Honor, I am asking that the grant of asylum that was given to the mother be considered for the petitioners who are before the court. Do we have the power to do that? Yes, Your Honor. Well, that is based on a finding of past persecution. They have been found to have been. Now you're mixing an apple and an orange. It sounded to me like you were saying because he's the son of a mother who got asylum, he should get it. But now you're saying past persecution. Well, that. For the petitioner, Mohammed Omar Sharif, he qualifies for asylum on two bases. One would be the establishment of a well-founded fear of persecution, which would be the grant from the family. And in addition, he also qualifies under the Child Protective Act of 2001. Well. So he qualifies under two bases. He would qualify separately for the grant under his mother because of the passage of the Child Protective Act. How do we handle the changed country conditions? Your Honor, the changed country conditions were addressed by the IJ. The Board of Immigration Appeals adopted that finding. And what happened when the IJ looked at the changed country conditions, he did not do an individualized assessment of these petitioners. Well, I tend to disagree with you. It was all involving the Jatiyo Party, and the IJ went into, in some detail, the husband's participation in the Jatiyo Party. And really, it was his wife who was heavily involved, and she'd gone back five times with no problems. But the Jatiyo Party had been integrated into the government by the time they got to it. That sounds to me like an individualized assessment. No, Your Honor. What he did is he did this by conjecture. And he looked at specific things. For instance, there are the two warrants of arrest. There are the two warrants of arrest. And the immigration judge did not address the two warrants of arrest in terms of how it applied to petitioner, but rather he has a conjecture that the two warrants of arrest were for criminal activity, even though there was no testimony to indicate that there was actual criminal activity. And the petitioner clearly stated that this was due to political belief, not because of any type of criminal activity, and he denied any type of criminal activity. Thank you very much, counsel. Our questions have taken you way over time. Your time has expired. Thank you, Your Honor. We'll now hear from the government. Good morning, Your Honors. May it please the Court. My name is Aviva Poxter for the Respondent, the Attorney General. Would you mind addressing the emergency motion to remand? Yes. I've got to tell you, this is the first time, at least in my memory, that we've had an emergency motion to remand filed on the eve of argument in a case that's been docketed a long time. I have never done it before, Your Honors. I apologize to the Court, first and foremost, for the lateness of the motion. It is extremely unusual for us to take that kind of step. I've never done it before myself. But I felt upon preparing for this argument that there were issues that the Board needed to address, that you didn't have a good record for evaluation of the claims presented. For example? Well, for example, as I stated in the motion, the change circumstances issue, we agreed with Petitioner's Counsel needed further clarification by the Board. In what respect? Well, I'm in a difficult position, Your Honors, because I can't confess error on behalf of my client agency, nor am I sure that there was error. Why not? What's wrong with that? We've done an awful lot of work on this case for you to come before us right now and tell us you can't give us any insight into what the problem is. Well, I mean, I can give you your insight, Your Honors. We think that there should have been more of an individualized analysis on the well-founded fear because the IJ, the immigration judge, relied primarily on an adverse credibility finding that the Board did not uphold. Most of his decision was based on that finding, which is no longer before the Court, and therefore the Board should address further the well-founded fear issue in particular. At this time. Well, does your emergency motion to remand extend to this issue of the son? Yes. The status of the son? Yes, it does. What's the government's position with respect to the son? Well, we would like the Board to evaluate or clarify his actual eligibility under the Child Status Protection Act because the Board didn't do that. Well, does the government have a position? I mean, obviously you want to examine, but is he or is he not attached to the father, and was that a strategic choice made by counsel for him or not? Yes, he was attached to the father. That is clear from the record that he was attached to the father's education. Wait a minute. However. Wait a minute. Hold on. Originally he was attached to the mother. Yes. And somewhere along the line that got changed. And you heard counsel in open court today suggest that there is error there. And what's the government's position? Well, he was also, his name also appeared on his mother's application, and it continues to be there. So for that reason, we want the Board to go back and tell us how that plays out when he was also on his mother's application. Well, why don't we just remand with instructions to the Board to grant, to treat him as if he were still attached to the grant which was given to the mother? What would be wrong with that? There wouldn't necessarily be anything wrong with that, Your Honors, but he still, they still have to, the Board still has to evaluate whether, assuming he is, let's assume arguendo, there is an instruction to attach him to the mother. The Board still has to tell us if he's eligible for adjustment. And because adjustment is discretionary relief, if the Board were to find that he is eligible, it may even have to go back to an immigration judge for a determination of whether he is, in fact, ultimately eligible to adjust status. So you disagree with the BIA's description of what happened here that I read a couple of times earlier? Not that we disagree, but that there's other issues involved. I mean, whether he's ultimately eligible is still an issue out there. In their brief on appeal, the respondents did not provide any arguments to demonstrate they should be excused from the representations of their attorney. Is that right? Yes, that is correct. Did the attorney make it clear that the son would go with the husband? That is how they proceeded. The attorney, as far as I can tell from the record, did not make any objection to that, because at the time the son wasn't eligible for anything under the mother. In other words, the only way he could possibly get status at that time, because the Child Status Protection Act had not yet been enacted, was for him to, in fact, proceed with the father. Did the attorney say their son would go forward on the lead respondent's asylum application as a derivative applicant? Yes. Do you have that in front of you? I do not. The other side says that never happened. I recall seeing that in the record, or no representation to the contrary. I mean, it certainly went forward. Well, now, wait a second. It would be no representation to the contrary. She did not have – there was no objection made in the record to the son going forward. Did the lawyer say the son would go with the husband? Yeah. I believe she did. You believe? Yes, she did. When did you read it last? Yesterday. You don't have it with you? I have it. Would you like me to look at it? Yeah, I would. Okay. It says transcript at 1112. Okay. May 20, 1997. 112, Your Honor? Transcript at 1112, according to the BIA. Okay. Please read it. Yes, she says, Your Honor, I would have the son included in the father's application. I'm sorry, would you look? She says on page 11 or 100 of our numbering, Your Honor, I would have the son included in the father's application. And what's the response to that? Keep going. Okay. Now that means the 1997 application that he previously filed will be withdrawn. Is that correct? That's correct, Your Honor. Yes, I mean, she did say that. Yes. The answers are always in the record. Yes, Your Honor. Because the representations frequently take ground to which a person is not entitled. Thank you for reading that. Thank you, Your Honor. And furthermore, we think that the case should be remanded because ultimately, even if this Court were to disagree with the Board's decision on the merits, it would still end up being remanded to the Board for further proceedings. Is there any rule, regulation, or statute that applies to the process you're advocating, number one, and number two? If there is, does it apply to both a petitioner and a respondent? I'm sorry, Your Honor, the rule for? Rule or regulation that permits us to remand a case that's been submitted on appeal after consideration by the BIA, ready for decision here, for further proceedings, reopen in essence. I didn't know that we had the authority to grant that kind of relief. This Court has done it on previous occasions. But usually that's by stipulation, is it not? Yes, Your Honor, it's usually by stipulation. You got a stipulation from opposing counsel? No, I was unable to reach her prior to the argument. Did you talk to her this morning? Only briefly, Your Honor. Did you bring up this subject? I did not, Your Honor, and that was my mistake. If this is held to be a rule that can be advocated by one party, I can imagine that Respondents are going to or Petitioners are going to start using it also, and we're going to be flooded with another 5,000 petitions after we've decided cases or in the middle of a decision. And what's to stop it? Well, again, it's – I definitely understand your concern, Your Honor. The way immigration seems to work, if Congress says we can do it, that's fine. I mean, I don't mind deciding cases, but I don't like to go beyond our judicial authority either. We're supposed to look at what the BIA did, and if it is legal and lawful, we'll affirm it. If not, we'll reverse it. That's normally what we do. Yes, Your Honor. But this is sort of a halfway house that should have been built a long time ago. I apologize again for the lateness of the motion, Your Honor. Will there be, in this case, if we send it back, for what you asked for? Four years. Four years? I would doubt it would be that long, Your Honor. That's about where we're backed up. If they're going to get in line again and come up on appeal, it'll be four years before we see it. This is 1997 that we're talking about. Well, they had several continuances. The IJ decision was not 1997. It actually took a couple of years for it to even get through that process. But I understand your concern, Your Honors, and, again, it's an extraordinary measure. We do recognize that, and we apologize for the lateness of the motion. Thank you, Counsel. The case just argued will be submitted for decision, and we will hear argument in Pachoa-Amaya v. Gonzalez.
judges: Beezer, O'scannlain, Trott